IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

BARBARA S. DELAMATTER                                                                    PLAINTIFF

V.                                             NO. 13-5181

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security Administration                      DEFENDANT

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Barbara S. Delamatter, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for a period of disability and disability insurance benefits (DIB) under the provisions of Title II of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I.     Procedural Background:**

Plaintiff protectively filed her current application for DIB on November 10, 2009, alleging an inability to work since January 2, 2007, due to severe back pain, pain and numbness in fingers and hand, severe depression, anxiety, fatigue, bone spurs, and suicidal ideation. (Tr. 162-163, 183, 190). Plaintiff's date last insured is March 31, 2010. (Tr. 190). An administrative hearing was held on March 9, 2012, at which Plaintiff appeared with counsel and testified. (Tr. 43-74).

By written decision dated May 3, 2012, the ALJ found that during the relevant time period (January 2, 2007 to March 31, 2010), Plaintiff had an impairment or combination of impairments that were severe - degenerative disc disease of the cervical spine, degenerative disc disease of the lumbar spine, obesity, depression, and anxiety. (Tr. 23). However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 24). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant requires a job that would allow a mixture of sitting and standing and would involve no more than simple tasks and simple instructions.

(Tr. 26). With the help of the vocational expert (VE), the ALJ determined that during the relevant time period, Plaintiff could not perform her past relevant work, but would be able to perform other jobs such as clerk and machine tender. (Tr. 36).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on June 26, 2013. (Tr. 1-5). Subsequently, Plaintiff filed this action. (Doc. 1). Both parties have filed briefs and this case is before the undersigned for report and recommendation. (Docs. 11, 12).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

**II.   Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnard, 292 F. 3d 576, 583 (8th Cir.

2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnard, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing her claim; (2) whether the claimant had a severe physical and/or

mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given her age, education, and experience. See 20 C.F.R. §416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity. See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §416.920.

**II.    Evidence Presented:**

Plaintiff was born in 1961 and received a GED. (Tr. 188, 190). The records reflect that Plaintiff was seeing her treating physician, Dr. David J. Tucker, in April of 2006, and was treated by him through February of 2012. (Tr. 416, 829). During the relevant time period, Plaintiff complained to Dr. Tucker of various maladies, such as cough, congestion, joint pains, chronic thoracic and lumbar strain, back pain, obesity, headaches, anxiety and depression, sacroiliac joint tenderness radiating down the buttocks into the upper thigh, carpal tunnel syndrome, attention deficit disorder, weakness, abdominal pain, and back muscle spasms, (Tr. 282, 293, 294, 307, 312, 321, 330, 337, 347, 370, 397, 401,403, 406, 408, 410).

On April 26, 2007, Dr. Tucker wrote a letter "To Whom It May Concern," stating that he had been seeing Plaintiff over the years for musculoskeletal thoracic and lumbar strain, as well as degenerative joint disease of the thoracic and lumbar spine. He noted that Plaintiff had been on medication including pain pills, anti-inflammatories, and muscle relaxers, and had received physical therapy as well. (Tr. 273). Dr. Tucker also stated that Plaintiff reported marked improvement upon the application of heat, especially when she had been in a hot tub in the past,

therefore he recommended that if at all possible, she should spend time in a hot tub half hour at a time, at least five days weekly, for her back therapy. (Tr. 273).

On October 22, 2007, Dr. Tucker noted that Plaintiff's extremities did show considerable tenderness, although there was no swelling. (Tr. 401). On July 21, 2008, Dr. Tucker reported that there was marked tenderness of the right sacroiliac joint, and tenderness radiating down the buttocks in the upper thigh. (Tr. 293). He noted that Plaintiff did occasionally take 10 mg. of Prednisone, which had helped her in the past. (Tr. 293). As her Wellbutrin was not helping with her depression, Dr. Tucker gave her samples of Cymbalta. (Tr. 293). Dr. Tucker also injected Plaintiff's sacroiliac joint with "Z cc Depo-Medrol 2 cc Marcaine." (Tr. 294). Dr. Tucker noted that Plaintiff had problems with carpal tunnel syndrome for "quite some time," and that Plaintiff finally agreed to have a nerve conduction study for that. (Tr. 294). There is nothing in the record to indicate that this study was every done.

On October 20, 2008, Dr. Tucker noted that Plaintiff had diffuse back tenderness and diffuse back pain. (Tr. 307). On November 24, 2008, Plaintiff questioned Dr. Tucker about ADD, and then diagnosed her with ADD.. (Tr. 312). On January 5, 2009, Plaintiff reported to Dr. Tucker that she had been weak and fatigued and had abdominal pain. (Tr. 321). On March 9, 2009, as Plaintiff was complaining that she had some chest pain which Dr. Tucker felt was pleuritic in nature, he diagnosed her with, inter alia, pleurisy. On July 20, 2009, Dr. Tucker found Plaintiff had tenderness diffusely of the thoracic and cervical spine. (Tr. 370).

On February 3, 2010, Plaintiff asked Dr. Tucker if she could switch back to taking Zoloft because she felt that the Wellbutrin was not helping. (Tr. 384). She also told Dr. Tucker that she was leaving the next morning to go to Florida to spend a couple of months with her daughter.

(Tr. 384).

On June 29, 2010, a Mental RFC Assessment was completed by non-examining consultant, Abesie Kelly, Ph.D. (Tr. 434). In the assessment, Dr. Kelly found that due to the minimal impairment in activities of daily living and adaptive functioning, Plaintiff was able to perform work where interpersonal contact was incidental to work performed, e.g. assembly work; where complexity of tasks was learned and performed by rote, with few variables, and little judgment, and where supervision required was simple, direct and concrete (unskilled). (Tr. 436). In her Psychiatric Review Technique form of the same date, Dr. Kelly found Plaintiff had a mild degree of limitation in restriction of activities of daily living and a moderate degree of limitation in difficulties in maintaining social functioning and in maintaining concentration, persistence, or pace. (Tr. 428). Plaintiff also had no episodes of decompensation, each of extended duration. (Tr. 428).

By letter dated July 27, 2010, chiropractor Mark S. Dean, DC, wrote a letter, wherein he stated that Plaintiff was essentially symptom free prior to leaving to go to Florida for a few months to take care of her daughter's child, and that she did receive some care on her return, as during her absence, her symptoms had returned somewhat. (Tr. 438-439). He indicated that conservative care was instituted. (Tr. 439). He concluded that overall, Plaintiff showed only minimal to fair success with conservative care, and he opined that she might do better with a work hardening program and/or training in activities of daily living, along with a structured exercise program to strengthen the muscles and ligaments surrounding the spine. (Tr. 439). He believed the diffuse degeneration in the cervical and lumbar spinal regions would most likely continue to cause exacerbations of her condition due to the loss of structural integrity of the

spinal components with any of the typical daily living activities with which she may become involved. (Tr. 439).

On August 20, 2010, a General Physical Examination was performed by Dr. Rayetta Eaton. (Tr. 441-445). Dr. Eaton found some limited ranges of motion in Plaintiff's cervical spine, positive muscle spasm in the thoracic spine, no muscle weakness, no muscle atrophy, normal gait/coordination, Plaintiff could squat/arise from a squatting position with help, and 100% normal grip in both hands. (Tr. 444). She also reported that Plaintiff had decreased range of motion in her neck. Dr. Eaton diagnosed Plaintiff with history of "psych.illness" and reported that Plaintiff needed a "psych. eval." (Tr. 445). She found muscle spasm and neck vertebral pain to palpation, and concluded that Plaintiff had "Moderate limitation walk, stand, sit, lift. Needs psych. evaluation." (Tr. 445).

On September 3, 2010, non-examining consultant, Dr. Judith Forte, completed a Physical RFC Assessment. (Tr. 532). She found Plaintiff was capable of performing medium level work. (Tr. 533-539).

On September 10, 2010, Dr. Tucker gave Plaintiff samples of Abilify for her depression. (Tr. 540). Plaintiff told Dr. Tucker she did not want a stress test, for financial reasons. (Tr. 540). On November 10, 2001, Dr. Tucker reported that Plaintiff reported the Abilify had markedly helped with her depression, and had helped her better than anything else she had ever taken. (Tr. 841).

On October 20, 2010, non-examining consultant, Dr. Kay Cogbill, completed a Case Analysis, and reported she had reviewed all of the evidence in the file and affirmed the assessment of June 29, 2010. (Tr. 542). On October 21, 2010, non-examining consultant, Dr. Bill

F. Payne, completed a Case Analysis, and reported he had reviewed all of the evidence in the file and affirmed the assessment of September 3, 2010, as written. (Tr. 543).

On April 8, 2011, Dr. Tucker reported that Plaintiff indicated her depression was markedly better when she was on Abilify, but that she could not afford it. (Tr. 839).

From May 16, 2011, to February 7, 2012, Plaintiff received treatment and counseling from Ozark Guidance. Plaintiff was counseled by Donna Copeland, LPC, except for one occasion on October 27, 2011, when Dr. John Ford saw Plaintiff. (Tr. 715). Although the Court has reviewed all of these records, they are of limited relevance, as all of these visits occurred after the relevant time period. Nevertheless, it is noteworthy that On December 20, 2011, Plaintiff advised Donna Copeland that she had taken a part time job as a cashier at the Dollar Store, and this was not disclosed at the hearing. (Tr. 729).

It is also important to note the Dr. Tucker completed a Physical RFC Questionnaire on February 5, 2012, wherein he states that his responses would have been true beginning 2006. (Tr. 714). Therefore, the Court has considered this report carefully. In it, Dr. Tucker reports that Plaintiff is incapable of even "low stress" jobs, and that Plaintiff should occasionally lift and carry less than 10 pounds and should never lift and carry more than 10 pounds or more. (Tr. 711, 713). Dr. Tucker also reported that Plaintiff had significant limitations in doing repetitive reaching, handling or fingering, and that her impairments would cause her to be absent from work more than three times a month. (Tr. 714).

At the hearing held on March 9, 2012, the Plaintiff stated that she was working for Cecil's Express doing paperwork two hours every two weeks. (Tr. 51). She stated that on a typical day, she usually did not get up until 10:00 in the morning, went to the bathroom, would

get an ice pack and lie on it for 15 to 30 minutes, unloaded the dishwasher, sat down for a time, went to the grocery store once every two weeks, took at least one nap during the day, cooked on weekends, and drove a car. (Tr. 60-64). In her Function Report dated March 23, 2010, Plaintiff reported that she took care of her husband and grandchildren, cooked, did the laundry, cleaned, mowed once a week, and had no problems with personal care. (Tr. 205-208). She also talked to friends on her computer, went to church on Sundays, and took her granddaughter to dance on Tuesday and "this makes me happy." (Tr. 209).

**III.   Discussion:**

Plaintiff raises the following arguments on appeal: (1) The ALJ failed to properly develop the evidence; 2) The ALJ omitted severe impairments at Step Two; 3)The ALJ's RFC finding is not supported by substantial evidence: and 4) The ALJ erred when he determined at step five that there were other jobs that the Plaintiff can perform. (Doc. 11).

**A.     Failure to Fully Develop:**

Plaintiff argues that the ALJ should have asked for clarification from Dr. Eaton rather than reject her opinion, and that the ALJ should have obtained a psychological evaluation, because Dr. Eaton recommended one. Plaintiff also argues that the ALJ should have requested certain x-rays from Dr. Tucker.

The ALJ has a duty to fully and fairly develop the record. See Frankl v. Shalala, 47 F.3d 935, 938 (8th Cir. 1995); Freeman v. Apfel, 208 F.3d 687, 692 (8th Cir. 2000). This is particularly true when Plaintiff is not represented by counsel. Payton v. Shalala, 25 FG.3d 684, 686 (8th Cir. 1994). This can be done by re-contacting medical sources and by ordering additional consultative examinations, if necessary. See 20 C.F.R. § 404.1512. The ALJ's duty

-9-

to fully and fairly develop the record is independent of Plaintiff's burden to press her case. Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010). However, the ALJ is not required to function as Plaintiff's substitute counsel, but only to develop a reasonably complete record. See Shannon v. Chater, 54 F.3d 484, 488 (8th Cir. 1995)("reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial"). "The regulations do not require the Secretary or the ALJ to order a consultative evaluation of every alleged impairment. They simply grant the ALJ the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination." Matthews v. Bowen, 879 F.2d 423, 424 (8th Cir. 1989). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." Mans v. Colvin, No. 13-CV-2103, 2014 WL 3689797 at *4 (W.D. Ark., July 24, 2014)(quoting Battles v. Shalala, 36 F.3d 43, 45 (8th Cir. 1994).

Although the ALJ is responsible to ensure that a claimant's record is fully and fairly developed, Plaintiff still must prove that she was disabled in the relevant period. 20 C.F.R. § 404.1512(a).

Contrary to Plaintiff's assertion, the ALJ did not reject Dr. Eaton's opinion in its entirety. Instead, the ALJ recognized Dr. Eaton's conclusion that Plaintiff had moderate limitations in walking, sitting, standing, and lifting. (Tr. 33). However, he also noted that "moderate" limitations did not translate to specific limitations in the Plaintiff's ability to sit, stand, walk, or lift, and he therefore gave Dr. Eaton's opinion little weight. (Tr. 33). In addition, the ALJ found that Plaintiff could perform sedentary work, allowing a mixture of sitting and standing, which does take into consideration Dr. Eaton's recommendation. The Court is of the opinion that the

record contains sufficient evidence for the ALJ to properly evaluate the record, including treating doctor records, consultative examinations, and the state agency doctors' opinions.

With respect to Dr. Eaton's recommendation that a psychological evaluation be obtained, as indicated above, the regulations do not require the ALJ to order a consultative evaluation of every alleged impairment, but simply grant the ALJ the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination. The fact that there is an absence of medical evidence to support disability does not require the ALJ to order consultative examinations.

The Court is of the opinion that there is sufficient evidence in the record from which the ALJ could make a determination regarding Plaintiff's mental condition. Dr. Tucker consistently treated Plaintiff for her depression and anxiety, and Plaintiff tried several different medications. In fact, in a Pain Questionnaire dated March 24, 2010, Plaintiff indicated that taking Cymbalta and Lyrica worked well for her, but that she could not afford them. (Tr. 214). On November 10, 2010, Plaintiff told Dr. Tucker that Abilify "has markedly helped with her depression, helped her better than anything else she has ever taken before." (Tr. 841). On April 8, 2011, Plaintiff reported to Dr. Tucker that she could not afford Ability. However, there is no evidence that Plaintiff sought treatment from a free clinic or that Plaintiff was denied treatment because of her inability to pay.

Accordingly, based upon the foregoing, the Court believes there is substantial evidence to support the fact that the ALJ fully and fairly developed the record in this case.

### B.     Severe Impairments:

Plaintiff argues that Plaintiff suffered from other severe impairments that were not listed

-11-

by the ALJ, such as reactive airways disease, chest pain and/or pleurisy, malaise, fatigue, chronic back pain, depression, anxiety and cervical disc disease.

An impairment is severe within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. §§ 1520(a)(4)ii), 416.920(a)(4)(ii). An impairment or combination of impairments is not severe when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. § § 404.1521, 416.921. The Supreme Court has adopted a "de minimis standard" with regard to the severity standard. Hudson v. Bowen, 870 F.2d 1392, 1395 (8th Cri. 1989).

In this case, the ALJ carefully discussed other impairments Plaintiff contended were severe. With respect to Plaintiff's alleged irritable bowel syndrome and migraine headaches, the ALJ found there was no objective evidence or clinical signs that would support finding these alleged impairments imposed more than minimal, if any, limitations on Plaintiff's ability to perform basic work activities. The Court agrees. Although Plaintiff may have had instances of irritable bowel syndrome and headaches, there is nothing in the record to support the fact that these conditions affected Plaintiff's ability to perform basic work activities.

With respect to Plaintiff's sciatic nerve damage, ADD, fibromyalgia syndrome, and diverticulitis, the ALJ found, and the Court agrees, that there was no objective evidence to support the existence of these alleged impairments prior to the date last insured.

With respect to reactive airways disease and musculoskeletal chest pain and/or pleurisy, Plaintiff did not allege these impairments in her application documents, which is significant. Dunahoo v. Apfel, 241 F.3d 1033, 1039 (8th Cir. 2001). In addition, there is no indication in the

AO72A
(Rev. 8/82)

records that establish that these conditions caused Plaintiff additional functional limitations.

As to Plaintiff's chronic back pain, the ALJ did, in fact, find that one of Plaintiff's severe impairments is degenerative disc disease of the cervical spine and lumbar spine. Accordingly, Plaintiff's argument is without merit.

Based upon the foregoing, the Court believes there is substantial evidence to support the ALJ's determination regarding Plaintiff's severe impairments.

**C.    RFC Determination:**

Plaintiff argues that the record shows that Plaintiff had additional limitations that were erroneously omitted from the ALJ's RFC, and that his RFC finding is based almost entirely upon his own "medical opinion" and rejects the medical opinions of the Plaintiff's doctors.

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

In this case, the ALJ found that during the relevant time period, Plaintiff had the RFC to perform sedentary work[1] except that Plaintiff required a job that would allow a mixture of sitting and standing and would involve no more than simple tasks and simple instructions. (Tr. 26).

The ALJ considered all of the evidence, and noted that Plaintiff was reportedly able to take care of her husband and grandchildren, cook, launder, and clean, attend to her personal needs and grooming, prepare meals, mow her lawn, drive independently, shop, watch television, use a computer, take her granddaughter to dance, regularly attend church, and regularly socialize with family and friends. (Tr. 27-28).

The ALJ also noted that a review of Dr. Tucker's treatment notes revealed little treatment for neck pain or associated symptoms prior to the date last insured. (Tr. 29). He also observed that Plaintiff's treatment for alleged neck pain and associated symptoms had been conservative in nature, in that Plaintiff had received no more than chiropractic care and medication for the alleged neck pain, arm pain and other alleged symptoms related to her cervical spine disorder. (Tr. 29). In addition, no more aggressive treatment such as surgery was every recommended.

The ALJ also discussed the reports relating to the x-rays that had been taken prior to the relevant time period. (Tr. 28). He found that while the diagnostic imaging reports supported Plaintiff's allegations to some extent, the physical examination findings within the medical evidence of record did not support her allegations. (Tr. 29). He stated that the lack of persistent clinical abnormalities, the minimal treatment, and the conservative nature of treatment, led him

---

[1] Sedentary work is defined by the regulations as involving lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools....Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. ...1983 WL 31251.

-14-

to conclude that Plaintiff's allegations of disabling neck pain and associated symptoms were not wholly credible. (Tr. 29).

The ALJ gave the state agency medical consultant's opinion little weight, finding that Plaintiff was more limited than found by the State agency medical consultant. (Tr. 33). The ALJ gave the State agency psychological consultant's assessment limited weight. (Tr. 33). He found it reasonable that Plaintiff experienced significant mental impairment related limitations prior to the date last insured, but found no credible evidence that Plaintiff experienced significant limitations in social functioning prior to the date last insured. It is also important to note that the treatment records of Donna Copeland, of Ozark Guidance, are dated after the relevant time period, with Ms. Copeland beginning treatment in May of 2011. (Tr. 714). Accordingly, these records of are limited relevance, as they were created after the relevant time period.

As indicated earlier, the ALJ gave Dr. Eaton's opinion little weight. And with respect to Dr. Tucker's opinion, the ALJ gave Dr. Tucker's opinion no weight. (Tr. 34). The ALJ recognized that Dr. Tucker had been the Plaintiff's treating physician for many years and would seemingly be in the best position to render an assessment of Plaintiff's limitations. However, he found Dr. Tucker's assessment was not supported by the evidence. (Tr. 34). The ALJ noted that Dr. Tucker indicated that he based his assessment on clinical findings and objective signs consisting of nothing more than pain on palpitation to multiple areas. He stated that Dr. Tucker "must rely on the claimant's description of pain, which may or may note be accurate." (Tr. 34). The ALJ noted that it appeared that Dr. Tucker relied quite heavily on Plaintiff's subjective reports, and uncritically accepted those reports as true, despite evidence to the contrary. (Tr. 34).

The Court agrees with the ALJ in analyzing Dr. Tucker's opinion. The Court notes that

AO72A
(Rev. 8/82)

it appears there were instances where Plaintiff inquired about or mentioned a particular diagnosis and, without any other objective evidence to support such diagnoses, Dr. Tucker adopted the diagnosis. For example, on November 24, 2008, when Plaintiff had some questions regarding ADD and indicated she was having a lot of problems with ADD, Dr. Tucker diagnosed Plaintiff with ADD. (Tr. 312). Dr. Tucker also diagnosed Plaintiff with fibromyalgia, even though there is no record of Plaintiff being tested for such or that certain trigger points were impacted.

The ALJ also assessed the weight to be given the opinion of Donna Copeland, and concluded that her treatment of Plaintiff began after the relevant time period and that she was not licensed psychologist and was not an acceptable medical source for purposes of establishing the existent of an impairment. (Tr. 36).

The Court finds, based upon the record as a whole, that there is substantial evidence to support the ALJ's RFC findings, and the weight the ALJ gave to the various medical opinions.

**D.     Step Five Determination:**

Plaintiff argues that the ALJ's hypothetical question to the VE was not consistent with the facts in the record, and therefore, his conclusion is not acceptable.

The ALJ posed the following hypothetical question to the VE:

> Q: Assume we have an individual who is the same age, education, and work background as that of the claimant. Assume further that this individual would be limited from an exertional standpoint to no more than sedentary work. Assume further this individual would need a job which would allow a mixture of sitting and standing throughout the day. Would that compromise the ability to perform the job of a collections clerk or dispatcher?
>
> A. No, sir.
>
> Q. For the second hypothetical, assume this individual would need a job which involves simple tasks and simple instructions. Would that

-16-

> compromise the ability to perform those jobs?
>
> A. Yes, sir, it would eliminate those jobs?
>
> Q. Are there other jobs?
>
> A. Yes, sir, there would be sedentary, unskilled jobs....such as clerical jobs, sedentary machine tender jobs.

(Tr. 71).

The Court finds that the hypothetical the ALJ posed to the VE fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005). Accordingly, the Court finds that the VE's response to the hypothetical questions posed by the ALJ constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude her from performing the jobs of clerical and sedentary machine tender. Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

**IV.   Conclusion:**

Accordingly, the Court recommends affirming the ALJ's decision, and dismissing Plaintiff's case with prejudice. **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions**

AO72A
(Rev. 8/82)

**of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 22nd day of January, 2015.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)